# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

JONATHAN R., *et al.*,

       Plaintiffs-Appellants-
       Cross-Appellees

    v.

PATRICK MORRISEY, in his official
capacity as Governor of West
Virginia, *et al.*,

       Defendants-Appellees-
       Cross-Appellants.

Case No. 25-1232(L)

---

## DEFENDANTS-APPELLEES' RESPONSE TO
## PLAINTIFFS-APPELLANTS' MOTION TO EXPEDITE APPEAL

# TABLE OF CONTENTS

INTRODUCTION.............................................................................1

BACKGROUND ..............................................................................2

ARGUMENT ...................................................................................6

I.    Plaintiffs have not identified harms warranting an
expedited appeal..................................................................6

    A.  Plaintiffs have not established irreparable, immediate
harms...........................................................................7

    B.  Plaintiffs' actions undermine the need for immediate
relief...........................................................................11

II.   Plaintiffs have not shown their appeal is likely to succeed ...........12

    A.  The district court respected the mandate..................................13

    B.  The district court correctly understood redressability...............17

    C.  The district court did not jump the gun on remedies................20

    D.  The district court's decision was procedurally sound................22

CONCLUSION ...............................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Airlines, Inc. v. Civ. Aeronautics Bd.*,
    445 F.2d 891 (2d Cir. 1971) ................................................................ 10

*Bostic v. Schaefer*,
    760 F.3d 352 (4th Cir. 2014) ............................................................. 10

*Cook v. Howard*,
    484 F. App'x 805 (4th Cir. 2012) ....................................................... 11

*Council 31, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Ward*,
    978 F.2d 373 (7th Cir. 1992) ............................................................... 6

*Di Biase v. SPX Corp.*,
    872 F.3d 224 (4th Cir. 2017) ............................................................... 9

*Doe 4 by & through Lopez v. Shenandoah Valley Juv. Ctr. Comm'n*,
    985 F.3d 327 (4th Cir. 2021) ............................................................... 1

*Gelin v. Shuman*,
    35 F.4th 212 (4th Cir. 2022) ............................................................. 11

*Jonathan R. by Dixon v. Justice*,
    41 F.4th 316 (4th Cir. 2022) ............................................................... 2

*League of Women Voters of N.C. v. North Carolina*,
    769 F.3d 224 (4th Cir. 2014) ............................................................... 7

*Lipscomb By & Through DeFehr v. Simmons*,
    962 F.2d 1374 (9th Cir. 1992) ........................................................... 10

*M.D. by Stukenberg v. Abbott*,
    119 F.4th 373 (5th Cir. 2024) ............................................................. 3

*Magnesystems Inc. v. Nikken, Inc.*,
    Nos. 94-1401, 94-1473, 1994 WL 492511
    (Fed. Cir. Aug. 30, 1994) .................................................................... 8

*In re Microsoft Corp. Antitrust Litig.*,
    333 F.3d 517 (4th Cir. 2003) ............................................................... 8

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Pierce v. N.C. State Bd. of Elections*,
  97 F.4th 194 (4th Cir. 2024) ............................................................ 7

*Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*,
  872 F.2d 75 (4th Cir. 1989) ............................................................ 11

*Scotts Co. v. United Indus. Corp.*,
  315 F.3d 264 (4th Cir. 2002) ............................................................ 8

*Tribal Sols. Grp., L.L.C. v. Valandra*,
  No. 23-60233, 2023 WL 7314308 (5th Cir. Nov. 6, 2023) .................... 8

*United States v. Fine*,
  644 F.2d 1018 (5th Cir. Unit B Apr. 1981) .......................................... 2

*Ward v. Dixie Nat. Life Ins. Co.*,
  257 F. App'x 620 (4th Cir. 2007) .......................................................... 6

## Rules

3d Cir. L.A.R. 4.1 ................................................................................ 7

4th Cir. L.R. 27 ................................................................................ 12

5th Cir. R. 27.5 ................................................................................ 7

6th Cir. R. 27 ................................................................................ 7

9th Cir. L.R. 27-12 ............................................................................ 7

FED. R. APP. P. 2 ................................................................................ 7

FED. R. APP. P. 28.1 ............................................................................ 6

## Other Authorities

Caelan Bailey,
  *Morrisey Inaugurated, Pledges Deregulation and
  Economic Growth*,
  WV PUB. BROAD. (Jan. 13, 2025, 4:43 p.m.),
  https://tinyurl.com/5cn9b824 .............................................................. 9

iii

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

Morgan Pemberton,
  *Kanawha County judge appoints monitor for DoHS'*
  *practice of housing kids in hotels, camps,*
  METRONEWS (Feb. 28, 2025, 6:30 p.m.),
  https://tinyurl.com/mrhzbydu ............................................................... 9

Steven Allen Adams,
  *House Health Committee Reviews Bill Addressing*
  *Emergency Foster Placements,*
  THE WEIRTON DAILY TIMES (Mar. 21, 2025),
  https://tinyurl.com/49453fd2 ................................................................ 9

Zach Strassburger,
  *Crafting Complaints and Settlements in Child Welfare*
  *Litigation,*
  21 U. PA. J.L. & SOC. CHANGE 219 (2018) ............................................. 3

## INTRODUCTION

In moving to expedite, Plaintiffs emphasize how important this case is. The State Defendants agree. But the case's importance is a reason to *deny* the motion, not grant it. When the stakes are this high, the Court deserves full and careful treatment of the issues from the parties. The parties in turn deserve a chance to brief these thoroughly—not through a hurried briefing schedule and fast argument. And the public deserves more than a rushed result, too. This case involves more than the parties before it; it could have far-reaching consequences for the West Virginia foster-care system and the operation of state governments generally.

Plaintiffs do not identify a specific irreparable harm that will happen during the few extra weeks that would allow an ordinary briefing schedule to unwind. Instead, they highlight their claims for relief. But the Court has addressed similar claims involving sensitive issues on the ordinary schedule. *See, e.g.*, Briefing Order, *Doe 4 by & through Lopez v. Shenandoah Valley Juv. Ctr. Comm'n*, 985 F.3d 327 (4th Cir. 2021) (No.19-1910), Doc. 14 (entering ordinary briefing schedule in case challenging medical care of unaccompanied immigrant children). And the parties briefed the prior appeal in this case on the usual schedule.

1

*See* Briefing Order, *Jonathan R. by Dixon v. Justice*, 41 F.4th 316 (4th Cir. 2022) (No. 21-1868), Doc. 18.

Plaintiffs strongly believe the district court erred, offering sharp words for the decision below. But disagreement is no reason to grant a motion to expedite. If that were the standard, then the Court would grant these motions in every case. And in truth, the district court didn't err. The district court respected the Court's prior mandate, which addressed abstention, not redressability. The district court also correctly understood standing. It did not "adjudicate" remedies but considered only whether a federal court had the capacity to order the requested relief. And it did not ambush Plaintiffs, as these concepts had been argued from the earliest stages of the case.

"[T]he interests involved and [the] facts of record compel careful, contemplative consideration and preclude a rush to judgment." *United States v. Fine*, 644 F.2d 1018, 1021 n.9 (5th Cir. Unit B Apr. 1981). The Court should deny the motion.

## BACKGROUND

Plaintiffs bring statutory and constitutional challenges to West Virginia's foster care system, arguing the program lacks policies and

procedures to meet the needs of foster children. The suit is one of several across the country. Unfortunately, "[t]he law [in this area] is chaos" because most all these suits settle, "and the settlements are heavy with bureaucratic requirements, but light on both legal reasoning and results." Zach Strassburger, *Crafting Complaints and Settlements in Child Welfare Litigation*, 21 U. PA. J.L. & SOC. CHANGE 219, 263 (2018). A suit in Texas, for instance, has resulted in over 13 years of litigation, four separate appeals, and the removal of the initial district court judge. *See generally M.D. by Stukenberg v. Abbott*, 119 F.4th 373 (5th Cir. 2024).

That story threatened to repeat here. Plaintiffs' complaint asked the court to "[r]equire [the Department of Health and Human Resources] to contract with an appropriate outside entity" to assume control over West Virginia's foster-care system. ECF No. 1 ¶ 405.a.i. This court-ordered contractor would complete assessments, "determine" "appropriate foster care placements and services for all children needing foster care placement," and develop a plan with deadlines the entity would impose on the Department. *Id.* Beyond forced contracting, Plaintiffs wanted the court to impose a set of strict constraints on the Department, including (1) child evaluations within thirty days of

3

placement; (2) written case plans within sixty days of placement; (3) time limits for the provision of services; (4) placement of children in "safe" and "adequately monitored" homes or facilities (which was not defined); (5) hiring, training, and retention of an "adequate" number of caseworkers (again, not defined); and (6) development of an "adequate" statewide plan (here too, not defined). *Id.* ¶¶ 405.a.ii–405.a.vii.

Plaintiffs' requested relief evolved throughout the case, becoming more onerous and unworkable as time went on. Plaintiffs developed their own standards for worker caseloads, which they proposed to be met within two years "with graduated increments to reach that standard, based on a review of current caseloads." ECF No. 533-20, PageID #18002. They set their own unit of measurement for caseloads depending on case type. *Id.* They crafted minimum educational requirements, recruitment and job advancement plans, and training programs for caseworkers. *Id.* at PageID #18002-03. They developed job duties for supervisors. *Id.* at PageID #18003. They set standards for the frequency of placement and home visits, placement in congregate care, placement stability, permanency rates, frequency of multi-disciplinary team meetings, adoption matching, medical evaluations and screenings, investigations of

maltreatment, and maltreatment rates. *Id.* at PageID #18002-05. And they sought written policy changes to mirror their desired standards. *Id.* at PageID #18007-08.

All this proved to be too much for the district court. After five years, hundreds of filings, dozens of depositions, extensive written discovery, and ample motions practice, the district court was compelled to address its own jurisdiction. *See* ECF No. 665. It recognized it could not "take over the foster care system of West Virginia." *Id.* at PageID #37047. Judges cannot "develop public policy, write budgets, hire caseworkers, or administer state agencies." *Id.* And all Plaintiffs' requested relief would "fall[] outside the court's power to redress Plaintiffs' injuries." *Id.* at PageID #37056. Concrete examples of failed efforts in similar contexts confirmed as much. *Id.* at PageID #37056-62. So the court dismissed the suit.

More than a week later, Plaintiffs filed a notice of appeal. *See* ECF No. 668. State Defendants also conditionally cross-appealed from the district court's earlier order certifying a class.[1] Roughly three weeks after

---

[1] State Defendants cross-appealed because reversal of a final judgment can "ha[ve] the effect of invigorating the cross-appeal [of a class

the district-court's order, Plaintiffs filed this motion to expedite.  Mot. to

Expedite ("Mot."), Doc. No. 8.

## ARGUMENT

Plaintiffs argue the Court should expedite their appeal because

they will suffer "injuries" and will succeed on their appeal.  Plaintiffs are

mistaken on both counts.

## I.     Plaintiffs have not identified harms warranting an expedited appeal.

Plaintiffs first say the Court should grant their motion because of

the "harms alleged in the Complaint and demonstrated by the evidence."[2]

---

certification decision] and supporting [their] jurisdiction."  *Council 31,
Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Ward*, 978 F.2d 373,
380 (7th Cir. 1992); *but see Ward v. Dixie Nat. Life Ins. Co.*, 257 F. App'x
620, 630 (4th Cir. 2007) (dismissing without prejudice a cross-appeal
from an order certifying a class as a matter of discretion).

[2] Plaintiffs chose not to submit a proposed schedule, complicating the
harm analysis.  For instance, Plaintiffs ask for oral argument, but the
Court does not typically sit during the months of June, July, or August.
If Plaintiffs are asking that this case be heard during the next available
argument session, then that session looks to be September 9-12.  (The
May 6-9 argument session seems to be filled.)  This case would be briefed
well in advance of the September session even if the parties follow the
ordinary schedule for cross-appeals under Federal Rule of Appellate
Procedure 28.1(f).  The State Defendants also would not oppose an order
that they respond within 30 days of whenever Plaintiffs file their opening
brief and 21 days after Plaintiffs' response on the cross-appeal (rather
than setting date-certain deadlines in the briefing order).  That approach

6

Mot. 6. But they have not established harms justifying exceptional relief, and Plaintiffs' actions undermine their insistence otherwise.

## A. Plaintiffs have not established irreparable, immediate harms.

The Court has generally expedited appeals only when time is of the essence. Perhaps an imminent deadline threatens to make an appeal moot or otherwise defeat relief. *See, e.g., Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 202 (4th Cir. 2024) (noting grant of motion to expedite in elections case in which "North Carolinians [were] currently going to the polls"). Or it may be that specific, irreparable harms—such as those supporting a preliminary injunction—are on the table. *See, e.g., League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014) (noting grant of motion to expedite in an appeal from denial of preliminary injunction). But only emergency circumstances like those— what one court calls "exceptional reason[s]," 3d Cir. L.A.R. 4.1—provide the "good cause" necessary to suspend the usual time limits. *See* FED. R. APP. P. 2(a); *accord* 5th Cir. R. 27.5; 6th Cir. R. 27(f); 9th Cir. L.R. 27-12.

---

would permit Plaintiffs to file their opening and reply briefs earlier and quicken the schedule. But in all circumstances, the period of "harm" (that is, the difference between an ordinary schedule and an expedited one) would likely be only few weeks at most.

Plaintiffs cannot point to an imminent deadline, so they seek to establish immediate, irreparable harm. But the Court generally will not find the kind of irreparable harm justifying unusual relief if the harm is stated at "too high a level of generality." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 531 (4th Cir. 2003), *abrogated on other grounds by eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). And irreparable harm should be "actual and imminent," not "remote []or speculative." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002) (cleaned up); *see also, e.g., Tribal Sols. Grp., L.L.C. v. Valandra*, No. 23-60233, 2023 WL 7314308, at *2 (5th Cir. Nov. 6, 2023) ("[A party must do more than] outlin[e] valid theories of irreparable harm without connecting those theories to evidence in the record besides recounting the facts underlying this case generally."); *Magnesystems Inc. v. Nikken, Inc.*, Nos. 94-1401, 94-1473, 1994 WL 492511, at *3 (Fed. Cir. Aug. 30, 1994) ("[G]eneralized statements with no specific support [do] not carr[y] [the] burden of showing irreparable harm.").

Plaintiffs have not established the necessary harm in their motion. They do not identify any specific child who will be injured if the parties do not complete their briefing a few weeks early. In fact, Plaintiffs do not

8

identify a specific child whose injury will be remedied by relief in this case, particularly considering existing protections under state law. Instead, they focus on broader criticisms of the West Virginia foster-care system. That system faces undeniable challenges, but Plaintiffs must say more. The harm that might justify expedition must pertain to how *their lawsuit* will stop constitutional and federal-level injury. And even if the complaint could be liberally construed to help them, unsworn allegations are not the sort of "evidence" needed to show irreparable harm. *Di Biase v. SPX Corp.*, 872 F.3d 224, 235 (4th Cir. 2017).

In trying to show harm, Plaintiffs also attack the West Virginia Legislature, arguing (without citation) the Legislature will ignore the foster-care system's problems because "[f]oster children do not vote" and their parents "lack political power."[3] Mot. 7. It's not obvious how this

---

[3] The Legislature is currently considering proposals related to foster care. *See, e.g.*, Steven Allen Adams, *House Health Committee Reviews Bill Addressing Emergency Foster Placements*, THE WEIRTON DAILY TIMES (Mar. 21, 2025), https://tinyurl.com/49453fd2. State courts are also acting. *See, e.g.*, Morgan Pemberton, *Kanawha County judge appoints monitor for DoHS' practice of housing kids in hotels, camps*, METRONEWS (Feb. 28, 2025, 6:30 p.m.), https://tinyurl.com/mrhzbydu. And West Virginia's new Governor announced plans to "fix" the foster-care system in his inaugural address. *See* Caelan Bailey, *Morrisey Inaugurated, Pledges Deregulation and Economic Growth*, WV PUB. BROAD. (Jan. 13, 2025, 4:43 p.m.), https://tinyurl.com/5cn9b824.

political criticism relates to the need to brief faster. If anything, such an assertion—that the Court must barrel to a decision because Plaintiffs are unhappy with the Legislature—confirms what the district court said: Plaintiffs are seeking to step into the shoes of "the executive, legislative, and judicial branches of state government." ECF No. 665, PageID #37063; *see also, e.g.*, *Lipscomb By & Through DeFehr v. Simmons*, 962 F.2d 1374, 1380 (9th Cir. 1992) (explaining how a certain "policy decision" as to Oregon foster care "is appropriately made by Oregon officials, not by the federal judiciary").

The State Defendants recognize this appeal presents serious issues. But federal courts are in the business of addressing serious issues—and they are not enough, standing alone, to justify dispensing with the ordinary rules. *See, e.g.,* Briefing Order, *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014) (No. 14-1167), Doc. No. 4 (entering ordinary schedule in case considering constitutionality of Virginia's ban on same-sex marriages). "In many such cases, … the briefs on such expedited appeals are inadequate." *Am. Airlines, Inc. v. Civ. Aeronautics Bd.*, 445 F.2d 891, 895 n.2 (2d Cir. 1971) (Friendly, C.J.). The most serious cases call for the best briefs.

10

**B.    Plaintiffs' actions undermine the need for immediate relief.**

Beyond the lack of specific, identifiable harm, Plaintiffs' actions undermine their claimed need for immediate relief.  In other "good cause" contexts, the Court has said "diligence" is the "touchstone."  *Gelin v. Shuman*, 35 F.4th 212, 218 (4th Cir. 2022) (cleaned up); *see also Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012).  Similarly, delay militates against a finding of irreparable harm, and "a long delay in seeking relief indicates that speedy action is not required." *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (cleaned up).

Plaintiffs have not proceeded as if every minute counts.  They waited about three weeks after the judgment to file this motion.  In their first appeal, they did not file a motion to expedite at all.  Things were much the same below.  Plaintiffs moved to modify the scheduling order at least seven times. *See* ECF No. 80, PageID #1172 (seeking 60-day extension of all deadlines); ECF No. 81, PageID #1210 (amending ECF No. 80 to seek additional 60-day extension of all deadlines); ECF No. 247, PageID #11948 (seeking 60-day extension of expert disclosure deadlines); ECF No. 293, PageID #12972 (seeking reopening of discovery and new scheduling order); ECF No. 379, PageID #14962 (seeking extension of fact

11

and expert discovery and dispositive motions deadlines); ECF No. 420, PageID #15700 (seeking extension of fact and expert discovery, dispositive motions, and motions in limine deadlines); ECF No. 483-484, PageID #165558, 16575 (seeking extension of all discovery, motion, and conference deadlines). They did not move for a temporary restraining order, preliminary injunction, or other extraordinary relief.

So after five-and-a-half years of litigation, it would be wrong to fast forward on a (perhaps last) critical step.

## II.    Plaintiffs have not shown their appeal is likely to succeed.

Plaintiffs' lack of imminent, irreparable, and identifiable harm is enough to deny the motion. Even if Plaintiffs could show their appeal is likely to succeed, that doesn't justify expediting—after all, the Court's rules contemplate a quick and summary disposition on the merits only when a movant can show the issues are "manifestly unsubstantial." 4th Cir. L.R. 27(f)(1); *but see Safar v. Tingle*, 859 F.3d 241, 247 (4th Cir. 2017) (warning against a "rush to judgment" in an "ostensibly 'easy' case"). Regardless, Plaintiffs have not shown a "substantial likelihood" of success. Mot. 7.

## A. The district court respected the mandate.

Plaintiffs first argue the district court's decision violates the mandate rule. "The mandate rule is a specific application of the law of the case doctrine."[4] *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (cleaned up). It provides that "the mandate of a higher court is controlling as to matters within its compass," *Juniper v. Davis*, 74 F.4th 196, 207 n.9 (4th Cir. 2023) (cleaned up), preventing lower courts from redeciding "the same issues in the subsequent stages in the same case," *Fusaro v. Howard*, 19 F.4th 357, 367 (4th Cir. 2021).

The mandate rule "does not reach questions which might have been decided but were not." *Lentz*, 524 F.3d at 528; *see also, e.g.*, *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) ("While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues."). It also does not apply when, among other things, later stages "produce[] substantially different evidence" than before. *Fusaro*, 19 F.4th at 367. So "[b]roadly speaking, mandates

---

[4] At least some courts have said the law-of-the-case doctrine "has no applicability to rulings on subject-matter jurisdiction." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 349 (6th Cir. 2023).

13

require respect for what the higher court decided, not for what it did not decide." *Biggins v. Hazen Paper Co.*, 111 F.3d 205, 209 (1st Cir. 1997).

In invoking the mandate rule, Plaintiffs read this Court's prior decision in *Jonathan R.* too broadly. There, Plaintiffs appealed from a decision by a different district-court judge applying *Younger* abstention— a brand of abstention requiring "deference to parallel state-court proceedings." *Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316, 320 (4th Cir. 2022). The Court considered whether moving forward would interfere with ongoing abuse-and-neglect and juvenile delinquency matters in state court and, relatedly, whether the state proceedings would provide adequate relief. *Id.* at 327-39. The Court reversed because it found the state court proceedings did not trigger *Younger* abstention. *Id.* at 327-28. It also found moving forward would not interfere with existent state-court judgments. *Id.* at 339-41.

Plaintiffs read *Jonathan R.* to prohibit the district court from considering federalism or comity interests. Mot. 8. But nothing in the decision goes that far, especially when "taking into account … the circumstances it embraces." *United States v. Cannady*, 63 F.4th 259, 266 (4th Cir. 2023). *Jonathan R.* was focused on state judicial proceedings

14

alone; it took comfort, for instance, in the idea that ultimate relief might be directed at "executive action." *Id.* at 334. Federalism was discussed only in the context of abstention; comity and federalism principles were relevant only to that framework. *Id.* at 328. *Jonathan R.* did not address standing or redressability. It could not have sub silentio. *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed.").

Contrast all that with what the district court did here. The decision below focused on federal courts' capacity to offer the relief Plaintiffs seek. *See* ECF No. 665. The decision was driven by concern over broad judicial control and administration of complex institutions. *Id.* at PageID #37053. It was not an abstention decision, let alone a *Younger* decision. It did not measure the federal courts' powers against the state courts'. And though it addressed federalism (because supervision of complex *state* institutions adds another layer of concern to redressability), it did not "reject" any "finding" of this Court on that issue. It had no opportunity to do so.

15

Nor did the district court "contravene[]" any "directive" from this Court on remedies. Mot. 9. The Court said the district court should identify and discern the specific remedies that Plaintiffs were seeking and then decide whether those remedies implicated comity concerns as to state courts. *Jonathan R.*, 41 F.4th at 334-35. It explained the district court was wrong to reject all relief for any foster-care child in the foster-care system. *Id.* But the district court did what the Court said it should: It examined Plaintiffs' specific requests for relief (after extensive discovery helped flesh out their precise "contours," *id.* at 328) and concluded that it could not "order the relief Plaintiffs seek." *See, e.g.*, ECF No. 665, PageID #37053. It never concluded Plaintiffs should be denied relief because of their status as foster-care children. *Jonathan R.*, 41 F.4th at 334-35. And it said nothing about state courts.

At best, Plaintiffs have taken dicta, divorced it from its context, and used it to attack the district court's logic. But even if Plaintiffs were right in suggesting some tension between their selective quotes and the district court's decision—to be clear, they're not—it wouldn't matter. "[O]bservations, commentary, or mere dicta touching upon issues not formally before the Court do not constitute binding determinations."

16

*Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 533 (7th Cir. 1982); *accord*
*Stanley v. Broward Cnty. Sheriff*, 773 F. App'x 1065, 1067 (11th Cir.
2019) (same).

Plaintiffs are not likely to succeed on their mandate-rule argument.

## B. The district court correctly understood redressability.

The decision here turned on standing. "To satisfy the irreducible
constitutional minimum of standing, a plaintiff must have (1) suffered an
injury in fact, (2) that is fairly traceable to the challenged conduct of the
defendant, and (3) that is likely to be redressed by a favorable judicial
decision." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir.
2018) (cleaned up). Plaintiffs, as "the part[ies] invoking federal
jurisdiction, bear[] the burden of establishing these elements." *Spokeo,
Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Here, of course, the district court focused on the third element of
standing—redressability. "An injury is redressable if it is likely, as
opposed to merely speculative, that the injury will be redressed by a
favorable decision." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755
(4th Cir. 2013) (cleaned up). But Plaintiffs ran into a problem: "Federal
courts do not exercise general legal oversight of the Legislative and

17

Executive Branches, or of private entities." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021). Certainly, "Article III [does not] confer on federal judges some amorphous power to supervise the operations of government and reimagine from the ground up the job description of" state officials. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 40 (2021) (cleaned up). Relief of that sort would require usurpation of "the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *see also Brown v. Plata*, 563 U.S. 493, 555 (2011) (Scalia, J., dissenting) ("Structural injunctions depart from that historical practice, turning judges into long-term administrators of complex social institutions.").

Plaintiffs say that they have asked for a "remedial decree[]" like any other. Mot. 13. But they seem to have lost sight of their own requested relief. Plaintiffs sought mandatory injunctive relief requiring the State to contract with an outside contractor who would assume control and then adopt various procedures and provisions that would direct operation of the State's foster-care system. ECF No. 1. And that's only for the general class, not the subclass. A mandatory injunction "in any circumstance is disfavored." *League of Women Voters*, 769 F.3d at 235.

Here, it was worse: stacking mandatory injunction upon mandatory injunction over the course of years unless and until plaintiffs' own definitions of "appropriate," "thorough," and "adequate" procedures were satisfied.

As the district court correctly recognized, federal courts can't order "[s]weeping institution-wide directives" like these. *United States v. Mississippi*, 82 F.4th 387, 400 (5th Cir. 2023). So when confronted with a request for one of these directives, the district court justly acknowledged that "[t]here simply are certain things that courts, in order to remain courts, cannot and should not do." *Missouri v. Jenkins*, 515 U.S. 70, 132 (1995) (Thomas, J., concurring). Plaintiffs wish to "put a federal court in a role tantamount to serving as an indefinite institutional monitor—not much different than an executive or legislative branch oversight agency—focused much more on ensuring that the [State] implements best practices rather than eliminates an ongoing violation of federal law." *Shakman v. Pritzker*, 43 F.4th 723, 732 (7th Cir. 2022) (cleaned up). "This is antithetical to the limited role the Constitution created for the Third Branch." *Id.*; *cf. United States v. Paramount Pictures*, 334 U.S. 131, 165 (1948) (vacating an injunction that would

19

"implicate the judiciary heavily in the details of business management if supervision is to be effective").

Redressability is a "threshold requirement" that is "perhaps the most important condition of justiciability." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 153 (4th Cir. 2000). The district court rightly took that condition seriously in dismissing.

## C. The district court did not jump the gun on remedies.

In a third argument, Plaintiffs offer a novel but unsupported theory: district courts are not entitled to address redressability until after the merits of the claim have been decided. Mot. 13. The logic seems to be that redressability involves remedies, and remedies should be decided after the merits, so redressability should have been off the table. "It is axiomatic in our legal system, however, that standing concerns must be brought out by a court at any time during a proceeding." *Allstate Ins. Co. v. Adkins*, No. 90-2321, 1991 WL 77673, at *3 (4th Cir. May 15, 1991); *accord Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986). And "a plaintiff must establish redressability from the outset of the suit." *United States v. Texas*, 599 U.S. 670, 692 (2023) (Gorsuch, J., concurring in judgment).

20

In addressing redressability, the district court did not "adjudicate" Plaintiffs' remedies—that is, it did not decide if Plaintiffs were entitled to specific relief.[5]  It also did not weigh equitable considerations and decide what remedies should issue to address the problems Plaintiffs allege—the question confronted in a case like *Milliken v. Bradley*, 433 U.S. 267, 280 (1977).  Instead, it considered whether it had the "*power* to grant the relief sought," ECF No. 665, PageID #37051 (emphasis added), just as this Court has said it should, *Buscemi v. Bell*, 964 F.3d 252, 261 (4th Cir. 2020).  It took Plaintiffs at their word about what they wanted, but it concluded it lacked the authority to give them any of it.  *See Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) ("[R]edressability requires that the court be able to afford relief *through the exercise of its power*.").  Questions about what remedies a federal court *can* offer and what remedies it *should* in each case are distinct.

Altogether, the district court appropriately considered the proposed remedies Plaintiffs sought and determined it had no power under long-

---

[5] Plaintiffs also say the order "must be vacated" because the dismissal should have been without prejudice.  Mot. 15.  Even if dismissal with prejudice was mistaken, it would not require vacatur.  The Court could just "modify the judgment … to reflect that [the] dismissal … is without prejudice." *Goldman v. Brink*, 41 F.4th 366, 369 (4th Cir. 2022).

established standing principles to award them. The district court recognized it was "bound by precedents and must respect both the limits of [its] jurisdiction and principles of party presentation." *Polelle v. Fla. Sec'y of State*, No. 22-14031, 2025 WL 758642, at *45 (11th Cir. Mar. 11, 2025) (Tjoflat, J., concurring in part and dissenting in part).

### D. The district court's decision was procedurally sound.

Plaintiffs lastly suggest the district court erred in not ordering more briefing. But "a litigant's standing presents a jurisdictional question that may be considered sua sponte." *Andon, LLC v. City of Newport News*, 813 F.3d 510, 513 n.2 (4th Cir. 2016). "While a party is entitled to notice and an opportunity to respond when a court contemplates dismissing a claim on the merits, it is not so when the dismissal is for lack of subject matter jurisdiction." *Scholastic Ent., Inc. v. Fox Ent. Grp., Inc.*, 336 F.3d 982, 985 (9th Cir. 2003) (cleaned up). That's particularly true when there's no way to cure the jurisdictional defect. *See, e.g., In re Indu Craft, Inc.*, 630 Fed.App'x 27, 29 (2d Cir. 2015) (allowing sua sponte dismissal for lack of subject matter jurisdiction where flaw is "unmistakably clear"); *George v. Islamic Republic of Iran*, 63 F. App'x 917 (7th Cir. 2003) (affirming sua sponte dismissal of the complaint for lack of subject-

matter jurisdiction without providing the plaintiff notice because the jurisdictional defect was incurable even if given the opportunity to amend the complaint).

Here, the district court's order was not the first time redressability was raised, and its choice to act on the issue was proper. In briefing on their motion to dismiss, the State Defendants addressed the relief requested. They explained that "[t]he allegations in the Complaint make clear that Plaintiffs intend to provide a mechanism for this Court, through the outside monitor, to review placements that Plaintiffs believe to be inappropriate," decisions the State Defendants argued were not properly made in federal court. ECF No. 35, PageID #733. In briefing on class certification, the State Defendants argued "it is impossible to craft an ascertainable class or subclass limited to members with standing to pursue Plaintiffs' claims" because they "do not challenge any official policy or well-defined practice of Defendants." ECF No. 322, PageID #13954. At that point, the district court explained it was "skeptical of any relief requiring it to assume control of a state agency and direct how that agency manages its program and allocates its funds." ECF No. 351, PageID #14466 n.1. The district court's skepticism arose from Plaintiffs'

request "urging the court to direct how a state executive agency must administer its foster care system." *Id.* And the State Defendants raised redressability on summary judgment, arguing "class-wide relief could not be addressed in a 'single injunction' that benefits the 'class as a whole' without individual tailoring"; that "Plaintiffs cannot prove that the relief they request would redress their alleged injuries"; and that the relief the Plaintiffs seek "is 'troubling' and not within [the district court's] 'authority' to order." ECF No. 535, PageID #23391-93; ECF No. 535, PageID #23391. Plaintiffs were thus aware the issue was on the table. And "to the extent that identical issues have already been raised in the litigation, the threat of procedural prejudice is greatly diminished." *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 n.1 (5th Cir. 2002). What's more, Plaintiffs could not have "fixed" the issue even had they been given a chance. Their requested relief is their requested relief, full stop.

Plaintiffs' authority is not to the contrary. *Robertson v. Anderson Mill Elementary School*, 989 F.3d 282, 291 (4th Cir. 2021), addressed a sua sponte dismissal under Rule 12(b)(6)—a type of dismissal that, as noted above, raises different concerns than a jurisdictional dismissal. In

24

*Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 269 (2015), the district court sua sponte dismissed a case for lack of standing where it identified a purported gap in the evidentiary record—but it never gave the plaintiffs a chance to fill the gap. Not so here, where Plaintiffs spent years shaping their theories of relief after extensive discovery; a "gap" had nothing to do with it. And in *Kentucky v. EPA*, No. 23-5343, 2024 WL 3569525, at *1 (6th Cir. July 29, 2024)—a case in which the State of West Virginia was a plaintiff—the district court dismissed the complaint for lack of standing right out of the gate. That's a far cry from the years Plaintiffs had a chance to build their case and avoid standing concerns.

In sum, the district court did not err on this or any other ground.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion to expedite.

Respectfully submitted,

JOHN B. MCCUSKEY
ATTORNEY GENERAL

/s/ Michael R. Williams
Michael R. Williams
  *Solicitor General*

Caleb B. David
  *Deputy Solicitor General*

West Virginia Attorney
General's Office
1900 Kanawha Blvd. E
Bldg. 1 Rm. 26E
Charleston, WV 25305
(304) 558-2021
Michael.R.Williams@wvago.gov
Caleb.B.David@wvago.gov

*Counsel for State Defendants-Appellees*

26

# CERTIFICATE OF COMPLIANCE

1.    This response complies with Fed. R. App. P. 27(d)(2)(A) because it contains 5,176 words.

2.    This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as required by Fed. R. App. 27(d)(1)(E), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Michael R. Williams
Michael R. Williams